SHEPHERD, J.
dissenting.
I respectfully dissent. No one yells “99 police” to signal that the ice cream truck is coming. Forecasting “99 police” is meant to alert all nearby hearers of police presence, so that any illegal acts can quickly come to a close, evidence can be flushed, and law enforcement can be frustrated.
This case is on all fours with Porter v. State, 582 So.2d 41 (Fla. 4th DCA 1991), where the lookout Porter yelled out certain code words and caused suspected drug dealers to run from the scene. The police had had the area under surveillance and were hoping to have the element of surprise to their advantage until Porter shouting “28 plainclothes”, foiled their drug sweep. Porter was arrested and convicted for obstructing and interfering with the officers in performance of their duties. “In short, Porter served as a lookout for drug dealers and because of his warning to them they were able to escape from the police officers.” Porter, 582 So.2d at 42.
In Porter, the circuit court in considering the testimony of the police officer noted that it was
well aware of ... lookouts who[se] sole purpose is to aid and assist others engaged in criminal endeavors. And they do so by notifying others [that] the police are in the area so that they may discard their evidence. That is not constitutionally protected speech.... It does constitute in the court’s view evidence of the crime of obstruction....

Id.

Similarly here also, on December 12, 2003, Officer Raymond Robinson had been conducting a reverse operation in the subject neighborhood, and a couple of the houses had already been taken down. Detectives were posted both inside and outside the homes under surveillance, so that buyers could be directed in to make the sale. Officer Robinson was meandering outside of the target house on his bicycle, and sometimes on foot, with an ear piece under his hooded street attire to keep in contact with the detectives inside. His official duties in support of the operation were to observe whether persons were selling in the area, to see what people were warning about the police, and to alert the officers in the house of who was coming to purchase drugs. Officer Robinson testified that twelve arrests had already been made that day as a result of the reverse operation in that neighborhood.
On the day in question, while Officer Robinson and his associates inside were engaged in carrying out the sting operation, two individuals were about to enter the gates of the target house when R.E.D. gave them the unmistakable warning to flee — “99 that’s the police there.” R.E.D.’s companion told Robinson to skedaddle, with a “get out of here, poppy.” As a result of the warning, the two unnamed individuals who were approaching the house changed directions and left. R.E.D. was arrested by other officers in the area for obstructing police work.
Undoubtedly, R.E.D.’s speech-conduct obstructed the police officer’s ongoing investigation and brought their sting operation to a grinding halt. In my opinion, the lower court was correct in finding that R.E.D. was guilty of violating § 843.02, Fla. Stat. (2003) in “obstruct[ing] ... any officer ... in the execution of any legal duty.”
The majority’s conclusion, relying on Jay v. State, 731 So.2d 774 (Fla. 4th DCA 1999), that an officer must legally or physically detain a suspect before a lookout can be charged with obstruction, is illogical. In Jay, the undercover officer was engaged in a discussion with two prostitutes when Jay warned them to discontinue as *209 sociation by identifying the officer as a cop.
I believe Jay was wrongly decided. It makes little sense to condition the concept of “execution of legal duty,” to mere physical apprehension after the legal elements for a crime are complete. I am confident that the officers in Jay were not talking to the ladies there for their own pleasure in seeking witty banter. The course of conversation engaged in with the prostitutes beforehand in that case was as much the execution of official police duties, as would have been their subsequent detainment and arrest of the ladies, should they have so solicited. A lookout through his words of warning can interfere with the execution of law enforcement during the pre-commission stage of the crime, as well as during the post-commission arrest stage with his actions. See J.V. v. State, 763 So.2d 511, 513 (Fla. 4th DCA 2000) (Polen, J. dissenting) (“the actions of the suspected seller indicated some likelihood that he was about to sell [Detective] Silverman illegal drugs. I would hold that Silverman was performing a legal duty, and J.V.’s warning interfered with or obstructed that performance”). There is no legal or other reason to create the false distinction of pre- and post-crime commission, when the end result of improvident verbal utterances can prematurely disrupt and frustrate police operations and objectives, as much as physical actions can following a crime. See Wilkerson v. State, 556 So.2d 453 (Fla. 1st DCA), rev. denied, 564 So.2d 1088 (Fla.1990) (a bystander who protested police effects to arrest drug suspect had his conviction affirmed because his conduct involved physical opposition to police, in addition to yelling and cursing).
Unfortunately, there is some tension in this area of the case law. Compare Jay v. State, 731 So.2d 774 (Fla. 4th DCA 1999) and Porter v. State, 582 So.2d 41 (Fla. 4th DCA 1991). The differences between the facts of Porter and Jay are negligible, yet the same district which considered both cases went in opposite directions. See also J.V. v. State, 763 So.2d 511 (Fla. 4th DCA 2000) (majority and dissenting opinions). Even our district has not been completely clear-on this subject. See State v. Dennis, 684 So.2d 848 (Fla. 3d DCA 1996).
In its brief, the defense puts considerable reliance on our Dennis decision. In that case, officers were hiding out in a car waiting for their cue to make an arrest following the sale of drugs at a distant location, when Dennis yelled out “ninety-nine.” Dennis who was not the target of the undercover drug operation was placed under arrest for obstruction. We found that Dennis did not commit a crime by yelling “ninety-nine,” noting that
there was no testimony indicating defendant was aware of anyone selling drugs several blocks away. Words alone generally cannot support a charge of obstruction of justice. Dennis was correct in his assertion that there was no evidence connecting him to the drug deal and also no evidence that his yelling “Ninety-nine” resulted in the target getting away.
Dennis, 684 So.2d at 849 (citations omitted). , Dennis is factually different from the instant ease because Dennis gave his warning “several blocks away” from the target house, id., while here, the siren was sounded by the front gate. Furthermore, Dennis’ yelling did not “resultf] in the target getting away,” id., while R.E.D.’s alarm did cause two individuals to leave the subject house. Because of these differences, Dennis, in some respects, should require the affirmation, of R.E.D.’s conviction.
Though factually distinguishable and unhelpful to R.E.D.’s defense, Dennis, in my view,, is also internally flawed. In considering the case law from the Fourth Dis *210 trict, we redeemed Dennis because he was unlike the defendant Porter who “was part of the criminal activity, since he was acting as a lookout.” Dennis, 684 So.2d at 849, citing Porter, 582 So.2d at 41. In so doing, we may have created the impression that one who is unconnected to the underlying criminal activity should be treated more softly.
It is my opinion that both the Dennis and Jay cases are splitting hairs. Again, it begs common sense to condition the outcome of these cases on whether the obstructionist was a sponsored lookout, such as in Dennis, or whether the elements of the crime were finalized so that the officer could make a legal arrest, such as in Jay. Whether the crime is complete, or whether the obstructionist is a member of the criminal enterprise under investigation, shouting out warnings of police presence is done for the obvious — to assist criminal brethren avoid arrest by curbing its otherwise willingly deviant behavior, to give a “heads up” on eliminating potentially prosecutorial evidence, and to obstruct police efforts. For when is the presence of law enforcement broadcast in high crime volume neighborhoods for innocuous reasons?
Lastly, in this genre of cases, I also find it quite troublesome that the speech conduct of these obstructionists can merely be brushed off as an exercise of the First Amendment rights. See Dennis, 684 So.2d at 849 (“Words alone generally cannot support a charge of obstruction of justice”). Context is paramount. There is a grave difference between the words uttered by an obstructionist to signal police presence to balk an undercover operation, and uttering generalized sentiments against authority or questioning police. Compare Jay, Porter, and City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (local ordinance found overbroad when defendant convicted of obstruction had told police to pick on someone his own size); D.G. v. State, 661 So.2d 75 (Fla. 2d DCA 1995) (defendant’s verbal protest and refusal to answer police questions during a search for a robbery suspect held not to be obstruction of justice). It is confounding that a defendant’s sheer opposition and desire to frustrate police work by bellowing warnings in gang and drug-infested neighborhoods, where many of its citizens would welcome a restored and orderly atmosphere, could remotely be considered protected constitutional activity.
In sum, no one ever warns unless there is trouble! R.E.D.’s conviction should not totter on abstruse issues of whether he was a formal lookout, how much knowledge he may have had of ensuing criminal activity, whether the projected criminal act was embryonic or full-term, or misapplication of the First Amendment. R.E.D. has cast his lot in siding with and assisting his criminal brethren; but for his statements, the official police operation would not have come to a halt. This is sufficient to support a conviction under § 843.02, Fla. Stat. (2003). For the reasons expressed in this opinion, I would affirm the conviction below.
So dissenting.